T.C. Memo. 2003-267

UNITED STATES TAX COURT

DAVID M. PRIESTLY, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13537-99L.              Filed September 11, 2003.

David M. Priestly, Jr., pro se.

<u>Irene Scott Carroll</u>, for respondent.

MEMORANDUM OPINION

CARLUZZO, <u>Special Trial Judge</u>:  On July 6, 1999, respondent
issued to petitioner a Notice of Determination Concerning
Collection Action(s) Under Section 6320[1] and/or 6330 for unpaid

---

[1] Section references are to the Internal Revenue Code of
1986, as amended and in effect at the time the petition was
filed.  Rule references are to the Tax Court Rules of Practice
and Procedure.

1988 Federal income tax and related liabilities of $17,801.[2]  In response to that notice, petitioner timely petitioned this Court for review of respondent's determination to proceed with collection.  Our jurisdiction in this case is established by section 6330(d).

## Background

Some of the facts in this case have been stipulated and are so found.  At the time the petition was filed, petitioner was a resident of California.

Petitioner's untimely 1988 Federal income tax return was filed on January 13, 1991.  On the return, petitioner's address is shown as 24143 Palomino Dr., Diamond Bar, California (the Diamond Bar address).  Petitioner reported wages of $42,926 from his employment as an engineer with General Dynamics Corp.  There were no Federal income tax withholdings on petitioner's wages from General Dynamics Corp.  There are two Schedules C, Profit or Loss From Business, included with petitioner's return.  One is for a business described as a "tax preparation/consulting" service; the other is for a business described as a "property management" service.  Approximately $5,100 of gross income is reported and approximately $21,000 of expenses are deducted on

---

[2] Other liabilities were referenced in the notice, but this Court has no jurisdiction over respondent's determination with respect to those liabilities.  See the Jan. 10, 2000, Order granting respondent's Motion to Dismiss for Lack of Jurisdiction and to Strike as to the 1990 Tax Return Preparer Penalty.

each Schedule C. Together with the wage income referred to above and $30 in dividend income, the losses reported on the Schedules C are taken into account in the adjusted gross income of $11,037 reported on petitioner's return.

A personal exemption deduction, two dependency exemption deductions, and the standard deduction applicable to a head of household are subtracted from the adjusted gross income and result in reported taxable income of $787. Applying the section 1 income tax rate applicable to a head of household, petitioner reported an income tax liability of $118, which was reduced to zero by a claimed credit for child and dependent care expenses. A $754 earned income credit was claimed, which gave rise to a refund in the same amount.

Petitioner was married as of the close of 1988. His spouse, Debra A. Priestly, was employed as a registered nurse during that year. Her untimely 1988 Federal income tax return, which was prepared by petitioner, was filed in late September 1989. The return shows the Diamond Bar address as her home address. The income reported on the return includes wages of $26,379, interest of $99, and dividends of $303. Included with her return is a Schedule C for a business described as a "property management" service. With one minor exception, the income and deductions reported on this Schedule C are identical to the items reported on the "property management" Schedule C included with

petitioner's return.  The $10,537 adjusted gross income reported on her return takes into account the above items of income and the loss reported on the Schedule C.

A personal exemption deduction, a dependency exemption deduction for an individual not listed on the return, and the standard deduction applicable to a head of household are subtracted from the adjusted gross income and result in reported taxable income of $2,237.  Applying the section 1 income tax rate applicable to a head of household, petitioner's spouse reported an income tax liability of $336, which was reduced to zero by a claimed credit for child and dependent care expenses.  The $1,344 refund claimed on the return consists of an $804 earned income credit, plus $540 of Federal income tax withholdings.

Petitioner's 1988 Federal income tax return was examined. As a result, respondent issued a notice of deficiency in which a deficiency of $8,118 in petitioner's 1988 Federal income tax was determined.  It appears that the deficiency results from the disallowances of the earned income credit and the deductions claimed on the Schedules C.  The details of the examination and deficiency determination cannot be determined with precision because respondent's administrative file has been destroyed.[3]

---

[3] According to respondent, the file was destroyed "in the ordinary course of business".  We interpret this to mean that the destruction of the file was consistent with respondent's record retention requirements.  In any event, petitioner does not claim that the file was destroyed for other reasons.

Petitioner describes the examination of his 1988 return as "uncontested".  He did not petition this Court in response to the above-mentioned notice of deficiency, and the deficiency, additions to tax, and interest were assessed on November 16, 1992.

Some time in the middle of 1993, a criminal tax investigation against petitioner was initiated.  He was charged and convicted of aiding and abetting the filing of false Federal income tax returns.  The criminal activity that resulted in petitioner's conviction involved the preparation of fraudulent Schedules C for his clients.  His sentence included a prison term, and he was incarcerated from March 10, 1999, until August 1, 2001.  In the course of the criminal investigation, petitioner's residence was searched pursuant to a search warrant issued in April 1994.  Some or all of the items seized during the search have not been returned to petitioner.

On January 21, 1999, respondent mailed to petitioner a final notice of intent to levy with respect to his outstanding 1988 Federal income tax liability.  On February 22, 1999, respondent received from petitioner a Form 12153, Request for a Collection Due Process Hearing.  The form is signed by petitioner and the Diamond Bar address is shown as petitioner's address on the form itself, as well as on the envelope in which the form was mailed to respondent.  In the area of the form where the taxpayer is

prompted to explain his or her disagreement with respondent's proposed collection activity, petitioner wrote:

> I do not owe the amount shown.  I do have receipts to substantiate my deductions.  They are with the IRS downtown Los Angeles branch.  I need time to retrieve them.  Ms. Snoody [sic] (rev agt) is aware of this.
> * * * I did not have the opportunity to dispute tax.

In response to petitioner's request for a hearing, in a letter dated April 15, 1999, addressed to petitioner at the Diamond Bar address, an Appeals officer, who was unaware that petitioner was incarcerated at the time, scheduled a hearing for May 20, 1999.  Petitioner apparently contacted the Appeals officer by telephone and requested that the hearing be rescheduled for another date.  Petitioner did not notify the Appeals officer that he was incarcerated; the Appeals officer was aware that petitioner had been convicted of criminal tax offenses but believed that petitioner's incarceration had been deferred pending appeal of his criminal conviction.  The hearing was rescheduled for June 17, 1999.  Petitioner failed to attend the June hearing because he was incarcerated.

In a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, dated July 6, 1999, addressed to petitioner at the Diamond Bar address, respondent determined to proceed with the proposed collection activity because:  (1) "All

statutory requirements have been met"; (2) petitioner's "allegations that the tax is not owed are unsubstantiated"; and (3) "the proposed collection methods are not too intrusive". In the notice, respondent also notes that petitioner "raised the issue" of the amount or the existence of his 1988 Federal income tax liability, but that he failed to present "anything to change the amount of tax assessed", and further, that petitioner offered "no other alternatives to enforced collection".

## Discussion

Petitioner's incarceration prevented him from attending either of the scheduled hearings with the Appeals officer. We could remand the case to respondent's Appeals Office to allow for an administrative hearing, see, e.g., Tatum v. Commissioner, T.C. Memo. 2003-115; Nestor v. Commissioner, T.C. Memo. 2002-251; however, under the circumstances we elect not to do so. Petitioner makes no claim that the Appeals officer failed to obtain verification that the requirements of any applicable law or administrative procedure have been met. See 6330(c)(1). Furthermore, petitioner does not raise a spousal defense, challenge the appropriateness of the proposed collection action, or offer any collection alternatives. See sec. 6330(c)(2)(A). Instead, petitioner's challenge to respondent's determination raises issues exclusively related to the existence or amount of

his 1988 Federal income tax liability.  See sec. 6330(c)(2)(B).[4]

Because we review de novo respondent's determination with respect

to the existence or amount of petitioner's 1988 Federal income

tax liability, see Sego v. Commissioner, 114 T.C. 604, 610

(2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000), it is

appropriate to consider and resolve those issues at this time in

this proceeding.  Remanding the case to respondent's Appeals

Office would, more likely than not, needlessly delay the

collection of petitioner's 1988 Federal income tax liability

(plus related additions to tax and interest), which, if the

proper amount has been assessed, is already long overdue.  See

Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); Thomas v.

Commissioner, T.C. Memo. 2003-231; Moore v. Commissioner, T.C.

Memo. 2003-1.

---

[4] Sec. 6330(c)(2)(B) states:

    (B) Underlying liability.--The person may also
raise at the hearing challenges to the existence or
amount of the underlying tax liability for any tax
period if the person did not receive any statutory
notice of deficiency for such tax liability or did not
otherwise have an opportunity to dispute such tax
liability.

Petitioner claims that he never received a notice of
deficiency for 1988.  Respondent's records indicate that one was
sent, but because respondent's administrative file has been
destroyed, respondent cannot refute petitioner's contention and
concedes that petitioner may challenge the existence or the
amount of his 1988 Federal income tax liability in this
proceeding.

After careful consideration of the evidence presented in this proceeding, we find that petitioner has failed to establish that there should be any adjustment to or reduction in the assessments made with respect to his 1988 Federal income tax liability.  Our reasons for this finding are summarized below.

The disputed liabilities in this case result from respondent's deficiency determination made more than 10 years ago.  The Commissioner's determination of a deficiency is presumptively correct, and the taxpayer bears the burden of proof to establish that a deficiency determination is erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[5]  As we have observed in countless opinions, deductions are a matter of legislative grace.  New Colonial Ice Co. v. Commissioner, 292 U.S. 435, 440 (1934).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  Id.  A taxpayer's obligation to substantiate a claimed deduction is not eliminated merely because the taxpayer's records have been lost, stolen, destroyed, or otherwise made unavailable to the taxpayer.  Malinowski v. Commissioner, 71 T.C. 1120, 1124-1125 (1979); Villarreal v. Commissioner, T.C. Memo. 1998-420 ("A taxpayer's inability to

---

[5] Sec. 7491 is not applicable to this proceeding.

produce records does not relieve the taxpayer of the burden of proof."). Certain expenses, e.g., interest, real estate taxes, items paid by check or credit card, etc., can be substantiated by records maintained by third parties. If the taxpayer's own records are not available, we expect the taxpayer to make some attempt to obtain substantiating records from third parties in those situations where it is reasonable to expect that third party records exist. Cf. Gizzi v. Commissioner, 65 T.C. 342, 345 (1975); Cook v. Commissioner, T.C. Memo. 1991-590.

Petitioner admits that he has few, if any, records that substantiate the deductions claimed on the Schedules C. According to petitioner, most, if not all, of the records that would substantiate the deductions here in dispute were seized in the search of his residence. We note that the search of petitioner's residence occurred after petitioner's 1988 return had been examined and the resulting deficiency, additions to tax, and interest had been assessed. Petitioner describes the examination as "uncontested" and does not claim that substantiating records were produced for respondent's agent during the course of that examination. Furthermore, to the extent that substantiating records exist and were in his possession at the time of the examination, he does not explain why those records were not provided to respondent's examining agent.

Instead of attempting to substantiate the disallowed deductions through third-party or duplicate records (e.g., statements from banks, credit card companies, local property tax records, etc.), petitioner produced various documents that he claims remained in his possession after the search. These documents include an unsigned blank check and deposit slip from a "business account", illegible copies of credit card receipts, automobile repair bills, several bank statements for a joint checking account, a notice advising petitioner and his spouse that their automobile insurance had expired and another notice indicating that the insurance had been reinstated, a notice that petitioner's real estate taxes for 1991 and 1992 were delinquent, a bill for a newspaper classified advertisement, a deed, a copy of a check made payable to Fleet Funding Assumption Department which appears not to have been negotiated, copies of mortgage statements, and copies of utility bills. When describing these documents at trial, petitioner acknowledged that some of them had nothing to do with deductions claimed on his 1988 return. Only some of the documents introduced into evidence by petitioner relate to 1988. According to petitioner, these documents were not seized along with his other records for that year because the agents conducting the search "missed" them. Furthermore, to the extent a document seems to relate to a deduction claimed by petitioner, it is equally plausible that the document relates to

a deduction claimed on the Schedule C included with his spouse's return.

We reject petitioner's testimony that he at one time had substantiating documents for the deductions claimed on the Schedules C included with his 1988 Federal income tax return, but that those documents were seized in the search of his residence. Petitioner has otherwise failed to produce in this proceeding sufficient substantiation for any of the deductions claimed on the Schedules C, and he has not given us a basis upon which we can reasonably estimate the amount of the expenses to which the deductions relate. See Norgaard v. Commissioner, 939 F.2d 874, 877 (9th Cir. 1991); Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Petitioner has failed to establish that respondent's determination of a deficiency in his 1988 Federal income tax was in any way erroneous. Respondent's Appeals officer has verified that the assessments made as a result of that determination are otherwise valid. Respondent's determination to proceed with collection is therefore sustained.

To reflect the foregoing,

Decision will be

entered for respondent.