T.C. Memo. 2013-52

UNITED STATES TAX COURT

ERVIN E. MEARS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8175-10.             Filed February 19, 2013.

Ervin E. Mears, pro se.

Philip S. Yarberough and John G. Guarnieri, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, Chief Judge: Respondent determined a $5,924 deficiency in

petitioner's 2006 Federal income tax and a section 6662(a) accuracy-related penalty

of $1,185.[1] After concessions by both parties, the issues for decision are:

---

[1]All section references are to the Internal Revenue Code (Code) in effect for

(continued...)

**[\*2]** (1) whether petitioner has unreported rental income for 2006; (2) whether petitioner is entitled to certain deductions claimed on his Schedules C, Profit or Loss From Business; and (3) whether petitioner is liable for the section 6662(a) accuracy-related penalty.

## FINDINGS OF FACT

The parties have stipulated some facts, which we find accordingly. When he petitioned the Court, petitioner resided in New Jersey.

## I. Petitioner's Business Activities

In 2006 petitioner was involved in several business endeavors, including a music group business and what he referred to as an electrical engineering business. As part of his music group business, petitioner managed and had a financial stake in a band, the Intruders, that traveled across the United States performing in shows. As part of his electrical engineering business, petitioner installed alarm systems, sold heating oil, and provided heating, ventilation, and air conditioning services to customers.

As described more fully below, in 2006 petitioner also owned numerous real properties.

---

[1](...continued)
the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] II. <u>Petitioner's Real Properties</u>

In 1969 petitioner purchased for $800 his residence in New Jersey (E. Charleston Avenue property).[2]  Petitioner's son resided with him at this property throughout 2006.  In 2006 petitioner paid $2,469 in property taxes on the E. Charleston Avenue property.

During 2006 petitioner also owned these real properties in New Jersey:  (1) a property on Woodland Avenue in Camden (Woodland Avenue property) that he acquired in 1983 for $8,210; (2) a property on Mt. Ephraim Avenue in Camden (Mt. Ephraim Avenue property) that he acquired in 1981 for $6,029; and (3) a property on Pine Avenue in Lawnside (Pine Avenue property) that he acquired in 1983 for $7,000.

Petitioner asserts that in 2006 he used the Woodland Avenue property and the Mount Ephraim property as rental properties.  In 2006 he was constructing an office building and storage garage (Pine Avenue structure) on the Pine Avenue property.  He did not use the Pine Avenue property for any business purposes during 2006, nor did he complete construction of the Pine Avenue structure during

---

[2]The record does not reveal how petitioner was able to acquire his residence for only $800--a price that was less than the property taxes he paid on it in 2006.

**[*4]** 2006. He planned on finishing construction once he had sufficient income to do so.

As of March 1, 2006, petitioner owed $11,774 to the Borough of Lawnside Office of the Tax Collector (Borough of Lawnside) for unpaid property taxes and related fees on the Pine Avenue property. The amount he owed to the Borough of Lawnside included: $8,242 for back taxes; $3,057 for interest on those taxes; a $75 "title report fee" for a title search conducted by the Borough of Lawnside; and $400 for attorney's fees paid or incurred by the Borough of Lawnside.

In 1983 petitioner purchased residential property for $5,000 on N. 17th Street in Philadelphia, Pennsylvania (N. 17th Street property). In 2006 he rented the N. 17th Street property to a tenant for $4,200.

III. Cancellation of Debt

During 2006 petitioner reached a settlement with Discover Financial Services (Discover), resulting in the cancellation of $5,369 of his credit card debt. Discover mailed to petitioner, at his correct address, a Form 1099-C, Cancellation of Debt, which reported that $5,369 of his credit card debt was canceled on December 31, 2006.

**[\*5]** IV.  Petitioner's Tax Return

Petitioner timely filed his 2006 Federal income tax return.  He attached two Schedules C, Profit or Loss From Business (Schedule C-1 and Schedule C-2), to his return.[3]

Petitioner's Schedule C-1 reported $29,210 of gross receipts and sales and $17,871 of cost of goods sold, resulting in gross income of $11,339.  With respect to this $11,339 petitioner reported $79,656 of expenses, resulting in a net loss of $68,317.  This $79,656 of expenses included:  $18,550 for depreciation; $2,900 for legal and professional services; $10,956 for repairs and maintenance; $18,750 for taxes and licenses; and $4,300 for other expenses.[4]

---

[3]Petitioner contends that Schedule C-1 reports the gross income and expenses related to his music business, electrical engineering business, and rental properties. He contends that Schedule C-2 reports additional gross income and expenses from his music business.  The parties have used the Schedule C-1 and Schedule C-2 terminology to differentiate the two, and so shall we.

[4]Petitioner also claimed deductions for advertising, car and truck expenses, insurance, interest, office expenses, supplies, and utilities.  These deductions are not at issue.

**[\*6]** Petitioner's Schedule C-2 reported $28,400 of gross receipts or sales. He also claimed deductions of $15,040, resulting in net profit of $13,360. These deductions included $11,490 for legal and professional services.[5]

Petitioner reported no cancellation of indebtedness income on his 2006 Federal income tax return.

## V. Respondent's Determinations

In the notice of deficiency respondent determined that petitioner failed to include $4,200 of rental income on his Schedule E, Supplemental Income and Loss.[6] Respondent also determined that petitioner failed to substantiate many of the deductions he claimed on his Schedules C, as summarized below. Respondent's determinations in the statutory notice of deficiency as well as the parties' concessions in this proceeding are summarized below:

---

[5]Petitioner also claimed deductions for advertising, commissions and fees, and supplies. These deductions are not at issue.

[6]In the notice of deficiency respondent also determined, and petitioner has not disputed, that petitioner had $5,369 of cancellation of indebtedness income and that in calculating his taxable income he failed to include his Schedule C-2 net profit of $13,360. Petitioner also failed to claim a standard deduction or elect to itemize his deductions, and he failed to claim any personal exemptions. In the notice of deficiency respondent allowed petitioner a standard deduction of $7,550 for petitioner's head of household status and allowed him personal exemptions of $6,600.

[*7]                                      Schedule C-1 deductions

|  | As reported on petitioner's Schedule C | Deductions disallowed in notice of deficiency | Respondent's concession |
|---|---|---|---|
| Cost of goods sold | $17,871 | $1,930 | $1,930 |
| Depreciation | 18,550 | 18,550 | --- |
| Legal and professional services | 2,900 | 2,900 | 750 |
| Repairs and maintenance | 10,956 | 10,956 | --- |
| Taxes and licenses | 18,750 | 12,943 | --- |
| Other expenses | 4,300 | 4,300 | --- |

Schedule C-2 deductions

|  | As reported on petitioner's Schedule C | Deductions disallowed in notice of deficiency | Respondent's concession |
|---|---|---|---|
| Legal and professional services | $11,490 | $10,800 | --- |

OPINION

## I.  Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that the determinations are in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

**[\*8]**   Because, as discussed below, petitioner has not complied with the Code's substantiation requirements nor maintained all required records, the burden of proof as to any relevant factual issue does not shift to respondent under section 7491(a). See sec. 7491(a)(1) and (2); Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).

## II. Petitioner's Alleged Fire

Petitioner claims that a fire destroyed most of his 2006 tax records and for that reason he is unable to substantiate his Schedule C-1 gross income and his deductions. He further claims that we should allow him to reconstruct his income and deductions through secondary evidence such as his own testimony.

Taxpayers are required to keep books or records that substantiate the amounts of their reported gross income and claimed deductions. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. If a taxpayer's records are lost or destroyed through circumstances beyond his or her control, however, the taxpayer may substantiate gross income or deductions through reasonable reconstruction. See Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979). The burden is on the taxpayer to show that the documentation was actually destroyed because of circumstances beyond his or her control. See Adler v. Commissioner, T.C. Memo. 2010-47, aff'd, 443 Fed. Appx. 736 (3d Cir. 2011).

[*9]   The circumstances surrounding petitioner's purported fire are vague, and he has offered no evidence, apart from his testimony, that a fire occurred and that his 2006 tax records were destroyed in such a fire.  Significantly, he failed to introduce insurance documentation or third-party testimony describing the alleged events or the extent of any fire.

But even if we were to assume, for the sake of argument, that a fire destroyed petitioner's 2006 tax records, he has failed to provide sufficient secondary evidence to substantiate the items of gross income and the deductions that are in dispute, as discussed more fully below.

III.  Rental Income

Respondent determined that petitioner failed to report $4,200 in gross rental income for 2006.  Petitioner concedes that he received this income.  He contends, however, that his self-reported Schedule C-1 gross income of $29,210 already includes this $4,200 of rental income.  Respondent disagrees.

Petitioner has failed to offer credible evidence demonstrating how he calculated his Schedule C-1 gross income.  Petitioner's only evidence, besides his testimony, is a handwritten sheet of paper that he claims he used to prepare his 2007 rather than his 2006 Federal income tax return.  This sheet of paper purportedly shows that for 2007 petitioner reported $20,345 of gross receipts on

[*10] one of his Schedules C, including $4,200 in gross receipts from his rental properties. Petitioner contends that this evidence supports an inference that he similarly included $4,200 in gross rental receipts on his 2006 Schedule C-1.

Notwithstanding petitioner's claims and the aforementioned piece of paper, the evidence does not establish that petitioner reported $4,200 of rental income for 2007. Petitioner conceded at trial that on his 2007 Federal income tax return he failed to report, among other things, rental income. More fundamentally, even if he had reported his rental income for his 2007 tax year, we are not persuaded that this would necessarily mean he also included $4,200 of rental income on his Schedule C-1 for 2006. In sum, petitioner has failed to provide records, receipts, or books to show his correct Schedule C-1 gross income amount and has also failed to provide secondary evidence to support his contentions. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. We find that petitioner failed to report $4,200 of rental income for 2006.

IV. Deductions

Section 162(a) allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 212(2) similarly allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year for the management, conservation, or

[*11] maintenance of property, including real property held for the production of income.  See Grant v. Commissioner, 84 T.C. 809, 825 (1985), aff'd without published opinion, 800 F.2d 260 (4th Cir. 1986); see also sec. 1.212-1(h), Income Tax Regs.  In general, no deduction is permitted for personal, family, or living expenses.  Sec. 262(a).

An expense is ordinary if it is customary or usual within a particular trade, business, or industry, or relates to a transaction "of common or frequent occurrence in the type of business involved" and is necessary if it is appropriate and helpful for the development of the business.  Deputy v. du Pont, 308 U.S. 488, 495 (1940); see also Welch v. Helvering, 290 U.S. at 113-114.  Generally, for an expenditure to be ordinary and necessary the taxpayer must show a bona fide business purpose for the expenditure; there must be a proximate relationship between the expenditure and the taxpayer's business.  See Challenge Mfg. Co. v. Commissioner, 37 T.C. 650 (1962); Henry v. Commissioner, 36 T.C. 879 (1961); sec. 1.162-1(a), Income Tax Regs.

Some claimed expenses, e.g., those related to "listed property", require the taxpayer to meet stringent substantiation requirements.  See sec. 274(d)(4); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). "Listed property" is defined to include any passenger automobile and "any

**[*12]** other property used as a means of transportation". Sec. 280F(d)(4)(A)(I) and (ii). Generally, no deduction is allowed for listed property unless the taxpayer maintains adequate records or other sufficient corroborating evidence to establish certain elements of an expenditure, including: the amount of each expenditure; the amount of business usage using an appropriate measurement such as mileage; the date for each expenditure or use; and the business purpose for each expenditure or use. See sec. 274(d); sec. 1.274-5T(b)(6), (c)(2)(I), Temporary Income Tax Regs., 50 Fed. Reg. 46016, 46017 (Nov. 6, 1985); see also Park v. Commissioner, T.C. Memo. 2012-279, at *2.

If a taxpayer establishes a deductible expense but is unable to substantiate the precise amount, the Court generally may approximate the deductible amount, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimate. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). The Court cannot estimate a taxpayer's expense under the Cohan doctrine, however, with respect to the items enumerated in section 274(d). See Sanford v. Commissioner, 50 T.C. at 827; Rodriguez v. Commissioner, T.C. Memo. 2009-22.[7]

---

[7]If a taxpayer loses his records because of circumstances beyond his control such as a fire, flood, earthquake, or other casualty, the taxpayer may substantiate the

(continued...)

**[*13]** A.  Schedule C-1 Legal and Professional Expenses

On his Schedule C-1 petitioner claimed $2,900 for legal and professional expenses he allegedly paid in 2006.  Attempting to substantiate the disputed items, petitioner submitted two billing statements from his attorney, each for $250, and three canceled checks also for $250 each.  On the basis of this documentation, respondent has allowed petitioner $750 of the legal and professional expenses petitioner claimed on his Schedule C-1 and has also allowed him another $250 of these expenses with respect to his Schedule C-2.[8]

Petitioner contends that he has directly substantiated five payments of $250 each but respondent has erroneously allowed him only four.  We agree with respondent, however, that the payment indicated on one of the billing statements, dated March 31, 2006, and indicating a $250 payment on March 6, 2006, represents the same payment reflected on one of the canceled checks dated

_____

[7](...continued)
deduction by "reasonable reconstruction".  See sec. 1.274-5T(c)(5), Temporary Income Tax Regs, 50 Fed. Reg. 46022 (Nov. 6, 1985).  Because we have found that petitioner failed to demonstrate that a fire occurred and that he lost his 2006 tax records, this exception is inapplicable to petitioner.  In any event, as discussed more fully infra, petitioner has failed to substantiate his deductions through reasonable reconstruction.

[8]This $250 concession is included in the $690 total concession discussed infra pt. IV.G.

**[*14]** February 28, 2006. We agree with respondent that petitioner has substantiated only $1,000 of his claimed legal and professional expenses.

Petitioner contends that the billing statements and canceled checks that he has produced demonstrate his pattern of making monthly $250 payments from January to May of 2006 and that we should infer that he made another seven payments of $250 from June to December of 2006.

Petitioner has failed to explain why he possesses two attorney billing statements but was unable to obtain additional statements from his attorney to substantiate additional claimed deductions. He has also failed to explain why he could not obtain records, such as additional canceled checks, from his financial institution. See Priestly v. Commissioner, T.C. Memo. 2003-267, aff'd, 125 Fed. Appx. 201 (9th Cir. 2005). Petitioner has failed to prove that he is entitled to deduct more legal and professional expenses than respondent has allowed.

B. Schedule C-1 Depreciation Expenses

Petitioner claims that he is entitled to $18,550 in depreciation deductions for his rental properties, his personal residence, and his five vehicles as claimed on his Schedule C-1.

Section 167 permits as a depreciation deduction a reasonable allowance for the exhaustion and wear and tear of property used in a trade or business or held for

**[\*15]** the production of income.  This depreciation deduction is determined by reference to the adjusted basis of the property, the applicable depreciation method, the applicable recovery period, and the applicable convention.  Secs. 167(c)(1), 168; Hosp. Corp. of Am. v. Commissioner, 109 T.C. 21, 45 (1997).

A taxpayer is entitled to depreciate an asset once the asset is placed into service for its intended purpose and may depreciate that asset only until it is retired from service.  See Wilson v. Commissioner, T.C. Memo. 2002-61, aff'd, 71 Fed. Appx. 623 (9th Cir. 2003); sec. 1.167(a)-10(b), Income Tax Regs.  An asset subject to depreciation is considered placed into service "when first placed in a condition or state of readiness and availability for a specially assigned function".  Sec. 1.167(a)-11(e)(1)(I), Income Tax Regs.  As a general rule, an asset is considered placed into service when it is acquired and put into use in a trade or business or income-producing activity.  See Piggly Wiggly S. Inc. v. Commissioner, 84 T.C. 739, 746-748 (1985), aff'd on another issue, 803 F.2d 1572 (11th Cir. 1986).

In order to prove entitlement to a depreciation deduction, a taxpayer must establish the property's depreciable basis by showing the cost of the property, its useful life or recovery period, and the previously allowable depreciation.  See,

**[*16]** e.g., Delsanter v. Commissioner, 28 T.C. 845, 863 (1957), aff'd in part, rev'd in part, and remanded per curiam, 267 F.2d 39 (6th Cir. 1959).

Petitioner failed to provide any evidence to explain his depreciation deductions or the calculations he made to determine his deductions. Petitioner's only discussion of his depreciation deductions, including his calculations and descriptions of various purported depreciable property, appears in his posttrial brief. Summaries and other statements in briefs, however, do not constitute evidence. See Rule 143(c); Evans v. Commissioner, 48 T.C. 704, 709 (1967), aff'd per curiam, 413 F.2d 1047 (9th Cir. 1969). Notwithstanding these evidentiary gaps, which are sufficient in themselves to be fatal to petitioner's claims, see, e.g., Craft v. Commissioner, T.C. Memo. 2005-197, we briefly address the merits of petitioner's claimed depreciation deductions for his real properties and vehicles.

1. Real Properties

Petitioner cites Smith v. Commissioner, T.C. Memo. 2010-162, for the proposition that he may increase his depreciable adjusted basis in each of his real properties by using property tax assessment values. Petitioner's reliance on Smith is misplaced. In Smith, we held that a taxpayer should properly allocate his depreciable basis between the value of nondepreciable land and depreciable

[*17] buildings in accordance with section 1.167(a)-2, Income Tax Regs. Our holding in Smith did not authorize an upward adjustment of basis on the basis of property tax assessments. Subject to exceptions not applicable here, the adjusted basis of property is generally its cost, adjusted as provided in section 1016. Secs. 1011 and 1012.

### a. Pine Avenue Property

At trial petitioner testified that he was still in the process of constructing the Pine Avenue structure during 2006 and that the construction process was no more than 85% complete at the end of 2006. Petitioner also testified that he did not use the Pine Avenue property for business purposes during 2006. On the basis of this testimony we find that petitioner had not yet placed the Pine Avenue property into service in 2006. Moreover, petitioner has failed to establish his adjusted basis in the property, when he placed the asset into service, or the previously allowable depreciation deductions on the property. Accordingly we hold that he is not entitled to depreciation deductions with respect to the Pine Avenue structure for 2006.

### b. N. 17th Street Property

Respondent concedes that petitioner held the N. 17th Street property for the production of income during 2006. Petitioner has failed, however, to establish his

**[\*18]** adjusted basis in the property, when he placed the asset into service, or the previously allowable depreciation deductions on the property. Petitioner has failed to establish that he is entitled to depreciation deductions with respect to his N. 17th Street property for 2006.

### c. Mt. Ephraim Avenue and Woodland Avenue Properties

Petitioner asserts that he used the Mt. Ephraim Avenue and Woodland Avenue properties as rental properties. Assuming without deciding that petitioner in fact held these properties for business purposes, the record is nevertheless insufficient to establish petitioner's proper depreciation deductions. Petitioner has failed to establish his adjusted basis in each property, when he placed the assets into service, or the previously allowable depreciation deductions for each property. Petitioner has failed to show that he is entitled to depreciation deductions with respect to these two properties for 2006.

### d. E. Charleston Personal Residence Property

Petitioner argues that he is entitled to depreciation deductions for business use of his personal residence. Petitioner alleges that he used all of the rooms in his home exclusively for business purposes except for his son's bedroom and bathroom. According to petitioner's calculations, he used approximately 79% of his residence for business purposes. He seeks depreciation deductions for business

**[\*19]** usage of his personal bedroom, kitchen, hallway, basement, and several other bedrooms.

Section 280A(a) disallows any deduction for business use of a taxpayer's personal residence, with a few limited exceptions. One such exception in section 280A(c)(1) provides that the general disallowance rules do not apply to any item to the extent it is allocable to a portion of the dwelling unit that is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer. "Exclusively used" is narrowly construed and requires that the taxpayer use " 'a specific part of a dwelling unit solely for the purpose of carrying on his trade or business'." Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1557 (1987) (quoting S. Rept. No. 94-938, at 148 (1976), 1976-3 C.B. (Vol. 3) 49, 186, and H.R. Rept. No. 94-658, at 161 (1975), 1976-3 C.B. (Vol. 2) 695, 853). A dwelling unit is used on a "regular basis" when used more than occasionally or incidentally. See Fadeley v. Commissioner, T.C. Memo. 2008-235. Generally, personal use of a room will preclude its use in computing depreciation or other allocable expenditures. Id.

As another exception to the general disallowance rule of section 280A(a), section 280A(c)(2) allows a deduction for items that are allocable to space within the home that the taxpayer uses on a regular basis to store inventory or product

[*20] samples.  See, e.g., Hefti v. Commissioner, T.C. Memo. 1988-22, aff'd without published opinion, 894 F.2d 1340 (8th Cir. 1989).  To qualify for this exception, the taxpayer must use the inventory or product samples in the taxpayer's trade or business of selling products at retail or wholesale, and the home must be the sole fixed location of the taxpayer's trade or business.  Sec. 280A(c)(2).

Petitioner's testimony that neither he nor his son used his personal bedroom, living room, or kitchen for personal reasons strains credibility.  Petitioner's testimony pertaining to the business use of his home was vague, inconsistent, elusive, and contradictory.  He testified that he used his personal bedroom exclusively for business purposes but later testified that he slept and ate in his bedroom.  He also testified that the kitchen was not used for eating or cooking, but he introduced photographs showing pots and pans on the stove.  Petitioner has failed to establish that any room or rooms were used exclusively for business purposes.[9]

---

[9]Petitioner also argues that even if we find that he did not use certain rooms exclusively for business purposes, "de minimis personal use" of the rooms does not disqualify him from deductions under sec. 280A.  See Lind v. Commissioner, T.C. Memo. 1985-490; Hughes v. Commissioner, T.C. Memo. 1981-140.  Petitioner has failed to prove, however, that he used each room for business on a regular basis or that any personal use was de minimis.

[*21] Petitioner argues that his use of several rooms in his residence for storing inventory entitles him to a depreciation deduction.  Specifically, he testified that he used his personal bedroom for storing alarm equipment.  He also testified that another bedroom contained "all the uniforms, all the shoes, computers, [and] supplies" that he used for business purposes.  He testified that he stores his fire alarm equipment, computers, guitars, and drums in his kitchen.  He argued that he used his basement to store heating and alarm equipment as well as painting supplies for his rental properties.  Finally, he testified that his living room housed sound equipment.

Petitioner's arguments fail for two reasons.  First, many of the items petitioner described are not items that would qualify as inventory or samples of products sold at retail or wholesale.  He has not claimed to be a retailer or wholesaler of uniforms, shoes, computers, music equipment, or paint.  Although petitioner may very well use such items in his trade or business, they are not inventory or product samples and do not fall within the narrow exception of section 280A(c)(2).

Second, petitioner has failed to demonstrate a proper method to allocate depreciation deductions; i.e., he has not provided evidence demonstrating the total square footage purportedly used to store his inventory in relation to the total square

**[\*22]** footage of his home.  In any event, petitioner failed to establish his depreciable basis in his home and any previously allowable depreciation deductions taken on the home.

We sustain respondent's determination disallowing petitioner's depreciation deductions on his personal residence.

## 2. Petitioner's Vehicles

Petitioner claims he is entitled to depreciation deductions for:  (1) two vans; (2) one tour bus; (3) one oil truck; and (4) one automobile.

Pursuant to section 274(d)(4) no deduction is permitted under section 162 with respect to "listed property" unless the taxpayer substantiates the deduction through introduction of adequate records or other sufficient evidence corroborating the taxpayer's statement.  Generally, listed property includes passenger automobiles and "any pickup truck or van".  See sec. 280F(d)(4)(A)(I) and (ii); sec. 1.274-5(k)(7), Income Tax Regs.  To meet the heightened substantiation requirements of section 274, taxpayers must substantiate their claimed deductions through production of records or other evidence that show the amount of the expense, the time and place of the use of listed property, and the business purpose.  Sec. 274(d); see also sec. 1.274-5T(b)(6), (c)(2), Temporary Income Tax Regs., supra.

[*23] Taxpayers who deduct vehicle depreciation expenses may also compute their deductions through use of a predetermined standard mileage rate (standard mileage method) in lieu of substantiating the actual amount of expenditures relating to the business use of listed property. See, e.g., Nash v. Commissioner, 60 T.C. 503, 520 (1973); DeLima v. Commissioner, T.C. Memo. 2012-291, at *4-*5; see also sec. 1.274-5(j)(2), Income Tax Regs. The standard mileage method includes an allowance for actual operating and fixed costs of a vehicle, including depreciation, maintenance and repairs, tires, gasoline oil, insurance, and other fees. See, e.g., Campana v. Commissioner, T.C. Memo. 1990-395; see also Rev. Proc. 2005-78, sec. 5.03, 2005-2 C.B. 1177, 1179. Under this method, eligible taxpayers deduct their vehicle expenses in an amount equal to the predetermined rate set by the Commissioner each year multiplied by the number of business miles driven in the year. See Rev. Proc. 2005-78, sec. 5.02. Taxpayers that use this method are not relieved, however, of the requirement to substantiate the amount of business mileage and the time and purpose of each use. See sec. 1.274-5(j)(2), Income Tax Regs.

Petitioner failed to explain which method he used to determine his claimed depreciation deductions for these vehicles, all of which are listed property under section 280F(d)(4). Moreover, he failed to introduce any evidence to establish his

[*24] claimed depreciation deductions, and he has not complied with the strict substantiation requirements of section 274(d). He has not introduced records, mileage logs, or other credible evidence to substantiate these claimed deductions. We sustain respondent's determination that petitioner is not entitled to depreciation deductions for his vehicles.

C. Personal Residence Taxes

Petitioner argues he is entitled to deduct a percentage of the $2,469 of real estate taxes that he paid in 2006 with respect to business use of his personal residence. Insofar as he seeks to deduct these taxes as an ordinary and necessary business expense, his claim falls because, as discussed above, he did not prove he used any room in his personal residence exclusively for business purposes. See secs. 262, 280A. Insofar as he seeks to deduct these taxes as itemized personal deductions, the record does not establish that he is entitled to do so or that any such itemized deduction would result in any benefit to him.[10]

---

[10]Generally, in computing taxable income an individual may elect to itemize certain personal deductions or claim a standard deduction. See sec. 63(a) and (b). Because respondent determined that petitioner was entitled to a $7,550 standard deduction for head of household status, petitioner would not appear to benefit from claiming these real estate taxes as an itemized deduction.

**[\*25]** D.  Schedule C-1 "Other expenses"

For 2006 petitioner reported $4,300 on his Schedule C-1 as "Other expenses", including an $1,800 expense for "Typing Exp" and a $2,500 expense for "Business Exp".  He testified that these expenses include, among other things, gravesite maintenance for deceased band members of the Intruders, touring expenses for the Intruders, and snow removal from his rental properties.

Petitioner failed to offer evidence substantiating his claimed $1,800 typing expense deduction.  He failed to offer receipts or otherwise demonstrate that these expenses were paid or incurred or that they were ordinary and necessary.  He is not entitled to this claimed deduction.

Petitioner estimates that in 2006 he paid $1,000 for gravesite maintenance, including flowers, for deceased band members of the Intruders.  He claims he paid these expenses because he felt he had a moral obligation to do so.  He testified that he would pay these expenses even if he stopped managing the band. Admirable as petitioner's actions may be, he is not entitled to deduct the costs associated with maintaining the gravesites.  He has failed to substantiate his claimed deductions through credible evidence such as records, receipts, or books.  Thus, he has failed to demonstrate that these expenses were paid or incurred.  Moreover, he has failed to show that the claimed deductions are ordinary and necessary business expenses

[*26] within the meaning of section 162.  He failed to demonstrate how these reported expenses reflect a customary or usual business practice within his music business, and he further failed to demonstrate a legitimate business purpose for these claimed expenses.

Petitioner has also failed to show that he is entitled to the remaining deductions he claimed on his Schedule C-1 for "Other expenses".  He failed to offer receipts or otherwise demonstrate that these expenses were incurred or that they were ordinary and necessary business expenses.

E.  Schedule C-1 Taxes and Interest

On his Schedule C-1 petitioner claimed deductions of $18,750 for taxes and licenses.  Respondent disallowed $12,943 of this amount.  Of the $12,943 disallowed amount, $11,774 appears to be attributable to back property taxes and related fees on petitioner's Pine Avenue property.[11]

As of March 1, 2006, petitioner owed $11,774 in back property taxes, interest on those property taxes, and attorney's and title report fees with respect to his Pine Avenue property.[12]  Respondent argues that petitioner must capitalize

_____

[11]Petitioner has offered no explanation or substantiation for the remaining $1,169 ($12,943 - $11,774) and for that reason is not entitled to deduct it.

[12]The parties stipulated that petitioner paid $11,784 in back property taxes

(continued...)

**[\*27]** these costs under section 263A. Petitioner argues that these costs are immediately deductible under section 162 or alternatively section 164.

     1. Taxes

Section 164(a)(1) allows a deduction for State and local real property taxes paid or accrued during the year. Sections 162 and 164 are subject, if applicable, to the section 263A capitalization rules. See sec. 161; see also Nat'l Starch & Chem. Corp. v. Commissioner, 918 F.2d 426, 428 (3d Cir. 1990), aff'g 93 T.C. 67 (1989), aff'd sub nom. INDOPCO, Inc. v. Commissioner, 503 U.S. 79 (1992). Whether an expenditure is deductible or must be capitalized is a question of fact. INDOPCO, Inc. v. Commissioner, 503 U.S. at 86.

Section 263A requires capitalization of certain expenses when a taxpayer produces real property or tangible personal property for use in a trade or business. Sec. 263A(b)(1); secs. 1.263A-1(a)(3)(i) and (ii), (d)(1), 1.263A-2(a), Income Tax Regs. Taxpayers produce property when they "construct, build, install,

---

[12](...continued)
and related fees on his Pine Avenue property. The evidence shows, however, that petitioner owed and paid $11,774 in back property taxes and related fees on this property. We disregard the parties' stipulation in this regard as clearly contrary to the facts disclosed by the record. See Loftin & Woodward, Inc. v. United States, 577 F.2d 1206, 1232 (5th Cir. 1978); Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989); Jasionowski v. Commissioner, 66 T.C. 312, 317-318 (1976).

**[\*28]** manufacture, develop, \* \* \* improve", raise, or grow such property. Sec. 263A(g)(1); sec. 1.263A-2(a)(1), Income Tax Regs.

Generally, when section 263A applies the taxpayer must capitalize direct costs, such as direct material and labor costs, in addition to "such property's proper share of those indirect costs (including taxes) part or all of which are allocable to such property." Sec. 263A(a)(2); sec. 1.263A-1(e)(2) and (3), Income Tax Regs. Indirect costs are allocable to produced property when the costs directly benefit or are incurred by reason of the production of property. See sec. 1.263A-12(a), Income Tax Regs. The regulations specifically list as an example of indirect costs required to be capitalized taxes attributable to land used in production activities. Sec. 1.263A-1(e)(3)(ii)(L), Income Tax Regs.

Petitioner testified that he purchased the Pine Avenue property for business purposes and that he had not completed construction of the Pine Avenue structure at the end of his 2006 tax year. He must capitalize the real estate taxes paid with respect to the Pine Avenue property in 2006. See Wilson v. Commissioner, T.C. Memo. 2002-61; Perkins v. Commissioner, T.C. Memo. 1995-189.

2. Interest

Section 263A(f) requires capitalization of interest for self-produced assets when that interest has been paid or incurred during the production period and the

**[*29]** interest is allocable to certain specified types of property, including real property.  Sec. 263A(f)(1)(A), (4)(A)(i); sec. 1.263A-12(a), Income Tax Regs.  The production period begins on the first date that any physical production activity is performed, e.g., the clearing, grading or excavating of land; demolishing of a building; or undertaking of structural, mechanical, or electrical activities with respect to a building or other structure.  Sec. 263A(f)(4)(B)(i); sec. 1.263A-12(c)(2), (e)(2), Income Tax Regs.  The production period ends on the date that the property is placed into service and all production activities reasonably expected to be undertaken by the taxpayer are completed.  Sec. 263A(f)(4)(B)(ii); sec. 1.263A-12(d), Income Tax Regs.  "Real property" is defined to include both the land and any building structures thereon.  Sec. 1.263A-8(c)(1), Income Tax Regs.  Allocable interest includes:  (1) interest that is directly attributable to production expenditures for the property and (2) interest on debt to the extent the taxpayer could have avoided the interest had production expenditures not been incurred.  Sec. 263A(f)(2)(B).  "Production expenditures" are defined to include the costs (whether or not incurred during the production period) required to be capitalized under section 263A(a) with respect to the property.  Sec. 263A(f)(4)(C).

The interest petitioner paid on the assessed taxes is directly attributable to his production expenditures, i.e., his tax assessments for his Pine Avenue property,

**[\*30]** and thus he must capitalize these costs.  See, e.g., Wilson v. Commissioner,

T.C. Memo. 2002-61.

### 3.  Attorney's and Title Report Fees

At trial petitioner submitted documentation showing that he paid the Borough

of Lawnside attorney's and title report fees.  Because these expenses are indirect

costs attributable to the production of petitioner's property, he must capitalize these

costs under section 263A.  See sec. 1.263A-1(e)(3), Income Tax Regs.

In sum, we sustain respondent's determination disallowing $12,943 of the

amount that petitioner claimed as a deduction for real estate taxes, interest paid on

those taxes, and attorney's and title report fees for 2006.

### F.  Schedule C-1 Repairs and Maintenance

On Schedule C-1 petitioner reported $10,956 in repairs and maintenance

expenses attributable to his electrical engineering business, music business, and

rental properties.  He claims that this amount includes expenses of replacing an

engine in the Intruders' tour bus as well as for performing routine maintenance and

repairs on four other vehicles.  Respondent disallowed the entire amount because of

petitioner's lack of substantiation for the claimed deductions.  We sustain that

determination.

**[*31]** Petitioner's only evidence relating to these expenses is his testimony that he paid $5,000 or $6,000 for a mechanic to replace an engine in his tour bus during 2006. He failed to offer receipts or otherwise demonstrate that these expenses were paid or incurred. Additionally, any such tour bus expenses would be expenses related to section 280F listed property and thus subject to the strict substantiation requirements of section 274(d). Petitioner has failed to offer any written records or other credible evidence to substantiate this claimed deduction.

We sustain respondent's determination disallowing petitioner's claimed deduction for repair and maintenance expenses.

G. Schedule C-2 Legal and Professional Services

On his Schedule C-2 petitioner reported $28,400 of gross receipts and $15,040 of total expenses. These alleged expenses included, among other things, $11,490 for legal and professional services. Respondent has disallowed all but $690 of these deductions.

Petitioner introduced numerous contracts between the Intruders and third parties to show that the Intruders performed in shows across the United States and that the band was paid in cash at performances. Petitioner and his son both testified credibly that the band members were required after a performance to sign documents verifying they had received their cash payments. Petitioner introduced

**[\*32]** business records at trial to demonstrate that he paid $7,005 in remuneration to former band members for their services with the Intruders during 2006. We hold that petitioner is entitled to deduct $7,005 on his Schedule C-2 for compensation paid to band members for professional services.

IV. Accuracy-Related Penalty

Respondent determined that petitioner is liable for the accuracy-related penalty under section 6662(a) and (b)(1) and (2) for negligence and substantial understatement of income tax. Section 6662(a) imposes a 20% penalty on any portion of an underpayment that is attributable to, among other things, negligence or disregard of the rules and regulations or a substantial understatement of income tax.[13] The Commissioner bears the burden of production with respect to this penalty. See sec. 7491(c). Generally, this means that the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty. Once the Commissioner has done so, the burden of proof is on the taxpayer to show that the penalty does not apply. See Higbee v. Commissioner, 116 T.C. at 446.

---

[13]Only one accuracy-related penalty may be applied with respect to any given portion of an underpayment even if that portion is subject to the penalty on more than one of the grounds described in sec. 6662(b). See sec. 1.6662-2(c), Income Tax Regs.

**[\*33]** Negligence includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence also includes any failure by the taxpayer to keep adequate books and records or substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. Petitioner exhibited a lack of due care in failing to report income, to keep adequate books and records, and to properly substantiate claimed deductions. Respondent has carried his burden of production with respect to the section 6662(a) penalty for negligence. Consequently, we need not determine whether respondent has also met his burden of production as to a substantial understatement.

The accuracy-related penalty does not apply with respect to any portion of an underpayment for which it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most significant factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law

[*34] that is reasonable in light of the taxpayer's experience, knowledge, and education.  Id.

Petitioner claims that he is not liable for the accuracy-related penalty because he acted with reasonable cause and good faith, he complied with any requests respondent made, and any errors he made were unintentional.  Petitioner manages and operates rental properties and several different types of businesses, including a band that travels across the United States.  His purported misunderstandings of fact and law about his unreported income and disallowed deductions were unreasonable in the light of his business acumen and experience.

Although petitioner concedes that he erroneously omitted from gross income $5,369 of cancellation of indebtedness income from Discover, he specifically disputes the accuracy-related penalty with respect to this omission.  He maintains that he never received the Form 1099-C from Discover informing him that he had cancellation of indebtedness income in 2006 and that he should not be liable for any penalties related to the underpayment of tax.  The Form 1099-C that Discover mailed to petitioner clearly shows, however, that Discover used his correct address, and petitioner has not demonstrated any reason he would not have received this mail.  Additionally, petitioner presented no evidence that he consulted with a professional tax adviser or took any other independent action to

**[*35]** determine the proper tax treatment of the cancellation of indebtedness income. Petitioner has not shown reasonable cause and good faith with respect to this underpayment.

We hold that petitioner is liable for a section 6662(a) penalty for negligence with respect to his underpayment of tax for 2006.

To reflect the foregoing and the parties' concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.