146 T.C. No. 3

UNITED STATES TAX COURT

MICHAEL JONES AND M. CHASTAIN JONES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27187-12.                    Filed February 9, 2016.

Ps claimed above-the-line deductions under I.R.C. sec. 62 on their 2008, 2009, and 2010 tax returns for expenses related to H's position as a public official. R examined Ps' 2008, 2009, and 2010 returns and determined that while H was entitled to certain deductions for expenses, he could deduct them only as unreimbursed employee business expenses, which would not reduce Ps' tax liability. R also determined that Ps were liable for accuracy-related penalties under I.R.C. sec. 6662(a).

Held: Under I.R.C. sec. 62(a)(2)(C), a "fee based" public official is an official who receives fees directly from members of the public in compensation for services provided. H, a state-court judge, is a public official but did not personally retain any of the money paid as fees to him. Therefore, he is not a public official compensated on a fee basis, and can deduct his unreimbursed employee business expenses only below the line.

Held, further, Ps are not liable for 20% accuracy-related penalties under I.R.C. sec. 6662(a).

Stephen Edward Silver and Derek W. Kaczmarek, for petitioners.

Alicia E. Elliott, for respondent.

HOLMES, Judge:  Michael Jones is an Arizona judge who claimed deductions on his 2008, 2009, and 2010 tax returns for unreimbursed business expenses related to his official position.  The Commissioner argues that these expenses should reduce only his taxable income, and not his adjusted gross income, which means that the deductions would be less valuable.  This is the general rule for those who are employees, but Judge Jones argues that he falls within an exception to this rule for employees in positions "compensated in whole or in part on a fee basis."

The section of the Code on which he relies--section 62(a)(2)(C)--is one which neither we nor any other court has ever analyzed and one we've mentioned only once (and that was in a nonprecedential opinion).[1]

---

[1]  See Davis v. Commissioner, T.C. Summ. Op. 2010-89.  (All section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.)

FINDINGS OF FACT

I.  Judge Jones

In Arizona the governor appoints judges on the advice of a nominating committee.  After their appointment, judges face retention elections every four years.  As part of this process, judges undergo performance reviews every two years.  These reviews consist of a series of surveys from litigants, jurors, attorneys, and even some citizens at large.  The results are then passed to a special commission of attorneys and judges who review the survey responses and make their findings available to the public.  The voters use information and feedback gleaned from the surveys to make informed decisions about which judges to keep on the bench.

Judge Jones was appointed to the Maricopa County Superior Court in 1995.  He remained in that position during the tax years at issue; and even though he retired in January 2012, the county's chief judge still recalls him to active duty to hear cases a couple days each month.  He is highly regarded.  Not only did he never lose a retention election, but he has remained throughout his career one of the highest scored judges in the largest county in Arizona.[2]

---

[2] He did have one blemish on his record--he admitted that he never volunteered for tax cases because he "never had an interest."

II.    Judge Jones's Expenses

The superior court is the general jurisdiction court for each county in Arizona. The Maricopa County Superior Court handles civil cases over $1,000, family law, juvenile matters, and felonies; and is also Arizona's statewide tax court. Ariz. Const. art. VI, sec. 14.

Maricopa County Superior Court is funded in part by the collection of fees.[3] See Ariz. Rev. Stat. Ann. sec. 12.284 (West 2003 & Supp. 2015). Individuals must pay the superior court clerk fees for various case filings, petitions, writs, the filing of any documents, and the issuance of any licenses or certificates. Id. The county does not, however, receive fees paid for wedding ceremonies--judges are allowed to collect those directly (although Judge Jones himself did not charge for weddings during the years at issue).

Maricopa County Superior Court judges are paid a regular salary--funded equally by the county's general fund and by the State.[4] They receive regular

---

[3] Arizona law (as in effect in 2008, 2009, and 2010) also sent some of the fees collected to the Elected Officials' Retirement Plan and to the county's general fund. See Ariz. Rev. Stat. Ann. sec. 12.284.03 (West 2003 & Supp. 2015).

[4] Halfway through 2010 Maricopa County became responsible for 100 percent of Maricopa County judges' salaries--meaning that for that tax year, Arizona paid only about one-quarter of Judge Jones's salary. See Ariz. Rev. Stat. Ann. sec. 12-128 (West 2003).

paychecks and a Form W-2 at the end of every year. Items like federal income tax and state income tax are withheld from each paycheck. Judges are also eligible for benefits provided by the state or the county--whichever they choose. Judge Jones, like many other judges on the court, was a member of the Elected Officials' Retirement Plan--he and other participating judges were informed yearly how much fee revenue was paid over to fund the retirement plan. He began receiving payments from the plan, however, only after his retirement in 2012.

When Judge Jones began judging, his court's budget allowed him to make reasonable expenditures for supplies and even the occasional special request. But steep spending cuts led to very tight budgets in Maricopa County during the years at issue. To save jobs, the county slashed discretionary funds. Reimbursements for court travel, for example, were limited to one annual, mandatory judicial conference. And though judges could still get mileage for travel in their official capacity, there was no longer a budget for office supplies or other equipment. Despite these cuts, the county still lost 425 staff positions.

The cutbacks were so severe that Judge Jones took it upon himself to make up for some of the gap. For example, because he held so many pretrial conferences in his chambers, he spent money decorating his office so that it would appear more professional. When he needed a new computer monitor in his

courtroom, he bought one himself. And in lieu of bonuses, he personally bought gift cards for high performing members of his chambers staff to "encourage them" and to "make them work harder."

Judge Jones was also in demand as a seminar speaker. He was invited especially often to presentations on Maricopa County's innovative Mental Health Court, which he has played an important role in creating. This court was the venue for competency cases, and many professionals in the State, both legal and nonlegal, became interested in it. Though his attendance at these seminars was encouraged to the extent that he would disseminate and bring back new ideas and techniques, the court could not reimburse him. So Judge Jones paid his own way to attend--bringing back new skills that eventually led to the creation of two other "problem solving courts." More basic expenditures included water (because the court turned off the water fountains), snacks for employees, and batteries to keep the court's clocks working.

III.   Judge Jones's Returns

Judge Jones consulted with a tax professional before filing his returns for the 2008 and 2009 tax years. His CPA came on the recommendation of several other court employees, and Judge Jones--a meticulous recordkeeper--turned over several boxes of documents to him each year. He and the CPA would then sit

down and go through his receipts to determine what was deductible. Judge Jones credibly testified that his CPA had researched the issue and advised him that these unreimbursed expenses should be deductible above the line. For lack of a more obvious place to put it, the CPA reported it on line 21 of Form 1040. And for 2008 and 2009, Judge Jones ultimately claimed deductions for his expenses on his returns in two places: in a negative amount on line 21 on Form 1040 ("Other income--As per IRC 7701(A)(26)")--making his deductions above the line--and (possibly as an alternative position) on line 21 ("Unreimbursed employee expenses") of Schedule A.

Judge Jones prepared his 2010 return the same way with a different accountant--his first CPA had died. This new accountant, also a CPA, agreed with the old one that a judge's unreimbursed expenses should be allowed as an above-the-line deduction. The only difference in his advice was where to claim that deduction. So for 2010 Judge Jones claimed his deduction on line 24 of Form 1040 ("Certain business expenses of reservists, performing artists, and fee-basis government officials") per the advice of his CPA. Judge Jones currently maintains that all of his deductions belong "above the line" on line 24 of his Form 1040.

The Commissioner initially disallowed Judge Jones's deductions in full. Later, the parties agreed that several deductions would be allowed. Though the

Commissioner still contends that many of the expenses aren't deductible, the primary issue for decision is whether Judge Jones is considered an official compensated on a "fee basis."[5] We tried the case in Arizona, where Judge Jones has resided ever since he filed his petition.

## OPINION

I.  Background:  Section 162 and Section 62

Section 162 allows deductions for trade and business expenses. Section 62(a)(1) allows deductions for those expenses to be made from gross income in computing AGI except for those expenses incurred by a taxpayer *as an employee*. A taxpayer who is an employee may instead deduct his unreimbursed employee business expenses in computing his taxable income only to the extent that they exceed 2% of his adjusted gross income (AGI). Secs. 162(a), 67(a); Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533.

Section 62(a)(2), though, carves out five narrow exceptions to this general rule. The one that this case is about is in section 62(a)(2)(C) and is an exception for unreimbursed business expenses "paid or incurred with respect to services

---

[5] Judge Jones produced all his records at trial. We bifurcated the case, with this opinion coming first, because the parties agree that the remaining disputes about particular expenses would affect Judge Jones's deficiency only were we to rule in his favor on the question we address here.

performed by an official as an employee of a State or political subdivision thereof in a position compensated in whole or in part on a fee basis." The parties agree that at least some of Judge Jones's expenses are allowed by section 162, that he is an employee of Arizona, and that he incurred these expenses with respect to his services. The sole issue for us to decide is whether Judge Jones is "in a position compensated in whole or in part on a fee basis." To figure that out, we need to decide what it means to be compensated on a fee basis and then whether any of Judge Jones's compensation comes from fees. If we decide against Judge Jones's position, the Commissioner wants to add penalties to any underpayments.

II.     Defining "Fee Basis"

The Commissioner wants us to interpret "compensated on a fee basis" to mean something like "paid by a member of the public for a service rendered by a judge who receives the fee." Judge Jones argues that "in a position compensated in whole or in part on a fee basis" means something like "a position *funded* in whole or in part by fees paid by members of the public for services rendered by judges." Neither the Code nor the regulations define what "fee basis" means, and the case law is similarly stubborn in its silence.

We begin with the text of the statute. We afford a statute its plain and ordinary meaning. Crane v. Commissioner, 331 U.S. 1, 6 (1947); Yari v.

Commissioner, 143 T.C. 157, 164 (2014); Dobra v. Commissioner, 111 T.C. 339, 345 (1998).  We avoid interpretations that "would produce absurd or unreasonable results."  Yari v. Commissioner, 143 T.C. at 164 (quoting Union Carbide Corp. v. Commissioner, 110 T.C. 375, 384 (1998)).  And we interpret statutes "in their context and with a view to their place in the overall statutory scheme."  FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (quoting Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989)).

We begin with the dictionary.  "Compensation" has two common meanings.  The first is an award or recompense for an injury, as when we say someone injured by a tortfeasor or whose property is taken by the government is entitled to "compensation."  See Black's Law Dictionary 301 (8th ed. 2004); see also Webster's Third New International Dictionary 463 (2002).  The second is something of value--usually money, though it's common enough for economists and businessmen to speak of "nonwage compensation," exchanged for the provision of services.  See, e.g., Gillian Lester, "A Defense of Paid Family Leave," 28 Harv. J. L. & Gender 1 (2005); John A. Litwinski, "Human Capital Economics and Income," 21 Va. Tax Rev. 183 (2001); see also Black's Law Dictionary 301; Webster's Third New International Dictionary 463.

Exchange in the sense of a balancing of accounts is the key here, as when

Thoreau spoke metaphorically: "If we will be quiet and ready enough, we shall

find compensation in every disappointment." I To Myself: An Annotated

Selection from the Journal of Henry D. Thoreau 10 (Jeffrey S. Cramer ed., Yale

Univ. 2007). Or Emerson:

> Human labor, through all its forms, * * * is one immense illustration
> of the perfect compensation of the universe. The absolute balance of
> Give and Take, the doctrine that every thing has its price,--and if that
> price is not paid, not that thing but something else is obtained, and
> that it is impossible to get any thing without its price,--is not less
> sublime in the columns of a ledger than in the budgets of states, in the
> laws of light and darkness, in all the action and reaction of
> nature. * * *

Ralph Waldo Emerson, Compensation, in The Selected Works of Ralph Waldo

Emerson (Graphic Arts Books ed., 2011).

These ordinary uses of "compensation" to mean "something of value given

in exchange for" are echoed elsewhere in the law. Section 1402(c) defines the

term "trade or business" for the purposes of self-employment income. It says:

> Trade or Business.--The term "trade or business," when used with
> reference to self-employment income or net earnings from
> self-employment, shall have the same meaning as when used in
> section 162 (relating to trade or business expenses), except that such
> term shall not include--
>
> > (1) the performance of the functions of a public office,
> > other than the functions of a public office of a State or a

political subdivision thereof with respect to fees received in any period in which the functions are performed in a position *compensated solely on a fee basis* * * * [Emphasis added.]

There's nothing useful in the section 1402 regulations on this question, but the Commissioner does have some subregulatory guidance. Revenue Ruling 74-608, 1974-2 C.B. 275, construes compensation by fees the same way the Commissioner wants us to in this case. It says that a public official is compensated by "fees" if he receives them directly from members of the public, but not if he is paid from a government fund. Id. If the "public official receives his remuneration or salary from a government fund and no portion of the monies collected by him belongs to or can be retained by him as compensation, the remuneration is not 'fees' under section 1402(c)(1)."[6] Id., 1974-2 C.B. at 276. Note that, although section 1402(c) refers to officials compensated *solely* on a fee basis and section 62 refers to officials compensated in *whole or in part* on a fee

---

[6] We aren't bound by revenue rulings, but we pay attention to them based on "their persuasiveness and the consistency of the Commissioner's position over time." Webber v. Commissioner, 144 T.C. __, __ (slip op. at 48) (2015) (noting what administrative lawyers call Skidmore deference); see Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). (And we let taxpayers rely on them even more, because we treat revenue rulings "as concessions by the Commissioner where those rulings are relevant to our disposition of the case," so that taxpayers may rely on favorable ones. Rauenhorst v. Commissioner, 119 T.C. 157, 171 (2002).)

basis, the difference has no effect on the meaning of the more general phrase "compensated soley on a fee basis."

Moreover, section 3401(a) also distinguishes between "fees" and wages paid to public officials. Section 31.3401(a)-2(b)(1) of the regulations under that section distinguishes between those public officials compensated by fees and those who receive salaries from the government:

> (b) <u>Fees paid a public official</u>.--(1) Authorized fees paid to public officials such as notaries public, clerks of courts, sheriffs, etc., for services rendered in the performance of their official duties are excepted from wages and hence are not subject to withholding. However, salaries paid such officials by the Government, or by a Government agency or instrumentality, are subject to withholding.

Other federal laws give us even more hints--for example, the Social Security Administration adopted a definition (identical to the one that the Commissioner used in his revenue ruling) for applying section 218 of the Social Security Act:[7]

> When a public official receives remuneration for services in the form of a "fee" directly from members of the public with whom he or she does business, that is considered to be a "fee." Otherwise, if payment is made to a public official from government funds, and no portion of the monies collected by him or her belongs to or can be retained by him or her as compensation, that remuneration is not considered to be a "fee."

---

[7] Section 218 of the Social Security Act allows the Social Security Administration to enter into an agreement with any state to provide Social Security benefits to its employees. 42 U.S.C. sec. 418(a)(1) (2006). If a state asks, these agreements exclude those who are compensated on a fee basis. <u>Id.</u> subsec. (c)(3).

Social Security Administration, Title II: State & Local Coverage--

Commissioner's Ruling on Definition of A "Fee" for Social Security Coverage

Purposes Under Section 218 of the Social Security Act. SSR 92-4P (Mar. 20,

1992), available at https://www.socialsecurity.gov//OP_Home/rulings/oas.

The Fair Labor Standards Act (FLSA) generally requires employers to pay

employees overtime when they work more than 40 hours in a week. 29 U.S.C. sec.

207(a)(1) (2006). But the FLSA regulations exclude some professional employees

compensated on a fee basis from that requirement. 29 C.F.R. sec. 541.300(a)

(2009). These regulations also provide that

> [a]n employee will be considered to be paid on a "fee basis" within
> the meaning of these regulations if the employee is paid an agreed
> sum for a single job regardless of the time required for its completion.
> These payments resemble piecework payments with the important
> distinction that generally a "fee" is paid for the kind of job that is
> unique rather than for a series of jobs repeated an indefinite number
> of times and for which payment on an identical basis is made over
> and over again. Payments based on the number of hours or days
> worked and not on the accomplishment of a given single task are not
> considered payments on a fee basis.

Id. sec. 541.605(a).

We also have to conclude that the Commissioner's position is the more

reasonable one. An enormous number of government agencies, courts,

departments, and boards receive fee income. See, e.g., Tax Court Rules of

Practice and Procedure App. II (U.S. Tax Court filing fee). If Judge Jones's construction of section 62(a)(2)(C) were correct, all the positions in all these government bodies would be "position[s] compensated in whole or in part on a fee basis." This would create a caste of employees--those employed as government "officials"--who would be exempt from the rule Congress chose to enact that limits the deductibility of unreimbursed employee expenses. Maybe Congress could do that, but it didn't do so plainly. Business expenses are also usually thought deductible because they are an ordinary and necessary requirement for producing income. But Judge Jones's reading of section 62 would uncouple the deductibility of an expense from the income it produces--once *a position* was funded in part by fees, any employee holding that position would be entitled to unlimited deduction of his unreimbursed business expenses regardless of whether those expenses had anything to do with those fees.

We think all this makes the Commissioner's reading the better one. It's consistent with the ordinary public meaning of the term, consistent with his own construction of a similar clause in section 1402, and consistent with other federal statutes' and regulations' definitions of compensation on a fee basis. We therefore hold that for Judge Jones to take his deductions above the line he must show that he received fees directly from the public in exchange for services that he rendered.

We find that he can't do this. He doesn't retain fees collected by his court as compensation for his services. His salary is paid from the county's general fund--that salary may be funded in part by fees, but these fees aren't paid in exchange for services that Judge Jones renders himself and Judge Jones isn't paid them directly.

III.  Judge Jones's Compensation

Judge Jones also argues that even if the phrase "fee basis" means that his compensation must come directly from the public he serves, he is still a fee basis official for two reasons: first, because the court automatically remits a portion of the fees paid by the public not just to its general fund but directly to the judges' retirement plan, and second because judges in Maricopa County are allowed to collect fees for performing wedding ceremonies.

While it's true that a portion of the fees that the superior court collects is automatically remitted to the Elected Officials' Retirement Plan, in which Judge Jones and other superior court judges participate, those fees aren't paid directly to him by the public, and aren't distributed to him until several years later. In fact, during the tax years at issue, Judge Jones didn't receive any compensation from his retirement plan as he hadn't yet retired. We therefore also hold that Judge Jones wasn't compensated on a fee basis via his retirement plan.

The argument about fees from weddings is a bit different. It's true that superior court judges in Maricopa County are entitled to receive fees directly from the public for performing wedding ceremonies. Collecting fees is discretionary, however, and Judge Jones admitted during trial that he waived fees for weddings he performed during the tax years at issue. If we read section 62 as telling us to look at Judge Jones's individual circumstances and ask if his individual position was compensated even "in part on a fee basis," we would have to answer "no".

But he makes a subtler argument--that section 62(a)(2)(C) tells us not to focus on the particulars of his situation but to step back and look at whether his type of position--i.e., superior court judge--is one "compensated in whole or in part on a fee basis." Just because he himself wasn't compensated on a fee basis doesn't mean that he wasn't in a *position* that was "compensated in whole or in part on a fee basis." If any superior court judge was taking a fee for even a single wedding, wouldn't that make the position of superior court judge one compensated at least in part on a fee basis?

This isn't a bad question. But let's take another look at section 62(a)(2)(C). It allows as a deduction from gross income in computing AGI

> [t]he deductions allowed by section 162 which consist of expenses
> paid or incurred with respect to services performed by an official as

an employee of a State or a political subdivision thereof in a position compensated in whole or in part on a fee basis.

And now consider this hypothetical: A Maricopa County Superior Court judge gets a call to perform a wedding in the far reaches of Arizona. The fee is $200, but he has to pay $120 for a motel, another $20 for gas and $10 for tolls. These are expenses that he incurs to produce fee income that goes directly to him. Should he report $200 in extra income and practically speaking (because of the 2% limit) get no useful deduction for the $150 in expenses that he incurred to make the $200 in fee income? Maybe the right way to read section 62(a)(2)(C) is that it allows a segregation of expenses for public officials compensated in part on a fee basis--allowing them to deduct above the line those expenses incurred to produce fee income, but treating them like all other employees when it comes to any other employee business expenses.

This might be a reasonable reading. It might even be the most reasonable reading of that section. But it's not one we have to make today in light of Judge Jones's honest admission that he married people for free during the years at issue here. We think that the possibility that one of his colleagues was more mercenary than he at weddings can't convert his own position into one "compensated in

whole or in part on a fee basis" any more than the collection of even one filing fee by the clerk of his court would.

Section 62(a)(2)(C) tells us to look at the particular situation of individual taxpayers. Is he "*an* official?" Is he "*an* employee of a State * * * in *a* position compensated in whole or in part on a fee basis?" Singular terms in the Code can include their plural form unless "the context indicates otherwise." See Commissioner v. Driscoll, 669 F.3d 1309, 1311 (11th Cir. 2012) (quoting United States v. Hayes, 555 U.S. 415, 422 n.5 (2009)), rev'g and remanding 135 T.C. 557 (2010). But, as in Driscoll, we think "a" and "an" are function words used before *singular* nouns and indicate a singular meaning here. See id. at 1312.

No portion of Judge Jones's compensation for his role as a public officer was provided on a fee basis. Rather, he was an employee of the State of Arizona and paid a salary for his work. Thus, his expenses are deductible as unreimbursed employee expenses under section 162 and should be reported as miscellaneous itemized deductions subject to a 2% floor. We hold for the Commissioner on this issue.

## IV. Accuracy-Related Penalties

The only other issue for decision in this case is whether Judge Jones is liable for accuracy-related penalties for the 2008, 2009, and 2010 tax years under

section 6662. Under section 6662(b)(2), a penalty is appropriate when an underpayment of tax is attributable to "[a]ny substantial understatement of income tax." An understatement of tax is "substantial" if it exceeds the greater of $5,000 or "10 percent of the tax required to be shown on the return." Sec. 6662(d)(1)(A). The Commissioner satisfies his burden of production because Judge Jones's understatement of tax exceeds $5,000 (and 10% of the tax required to be shown on the return for each tax year at issue). See sec. 6662(b)(2).[8]

Judge Jones can avoid the penalties by showing evidence that his mistake was reasonable and in good faith. See sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. In making our decision, we examine all the relevant facts and circumstances, including his efforts to determine his proper tax liability and whether he relied in good faith on professional advice. See sec. 1.6664-4(a), Income Tax Regs. Reliance on a preparer excuses a taxpayer from an accuracy-related penalty only if his reliance was reasonable. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). Reliance is reasonable if:

---

[8] Section 6662 penalties are also appropriate where an underpayment of tax is attributable to a taxpayer's "[n]egligence or disregard of rules or regulations," and the Commissioner asserts both arguments. Sec. 6662(b)(1).

- the adviser was a competent professional with sufficient expertise to justify reliance;

- he provided necessary and accurate information to the adviser; and

- he actually relied on the adviser's judgment in good faith. Id.

We find Judge Jones's testimony as to his CPAs' expertise credible. Though neither CPA testified[9] as to his education, Judge Jones testified that each had several years of experience and came highly recommended by other members of the court. We are satisfied that Judge Jones provided all of the relevant paperwork to his CPAs--he even discussed each individual deduction with them.

We find that Judge Jones reasonably relied on professional advice. Even without a CPA to back him up, we have no doubt about Judge Jones's good faith in taking the position that he did. We also find that the position he took was quite reasonable in the absence of any case law or regulation. This is one of those Code sections that has some ambiguity in it and that no court has ever looked at before

---

[9] We note that one of the two CPAs Judge Jones relied on to prepare his return had died before trial.

in any depth.  Though in the end we agree with the Commissioner, we see no justification for penalties.  We find for Judge Jones on this issue.

Decision will be entered under

Rule 155.
