T.C. Memo. 2021-111

UNITED STATES TAX COURT

DANIEL OMAR PARKER AND CHANTRELL ANTOINE PARKER,
Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13231-19.　　　　　　　　　Filed September 23, 2021.

Daniel Omar Parker and Chantrell Antoine Parker, pro sese.

<u>Erin A. Schaffer</u>, <u>John W. Sheffield III</u>, <u>Jason P. Oppenheim</u>, <u>Brianna B. Taylor</u>, and <u>Rebeccah L. Bower</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:　With respect to petitioners' Federal income tax for 2015, the Internal Revenue Service (IRS or respondent) determined a deficiency of $27,983 and an accuracy-related penalty.　Petitioners timely petitioned this Court. After concessions four issues remain for decision:　(1) whether petitioners can de-

[*2] duct, on Schedule C, Profit or Loss From Business, car and truck expenses in excess of the amount respondent allowed; (2) whether petitioners can deduct retirement contributions in excess of the amount respondent allowed; (3) whether petitioners can deduct expenses on Schedule A, Itemized Deductions, in excess of the amount respondent allowed; and (4) whether petitioners can deduct the cost of demolishing a structure and their basis in that structure.[1]  We resolve these issues largely in respondent's favor.

FINDINGS OF FACT

These findings are based on the parties' joint stipulation of facts with attached exhibits, the exhibits and testimony presented at trial, and certain posttrial exhibits introduced into the record by leave of Court.  Petitioners resided in Georgia when they filed their petition.

A.     Petitioners' Employment

Petitioners are married.  In 2015, the tax year at issue, petitioner wife (Ms. Parker) was a personal trainer who worked with clients at their homes or in a gym where she rented space.  She was concurrently enrolled in a Ph.D. program at

---

[1]Unless otherwise indicated, statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3] Georgia State University. As part of this program she conducted research by traveling in the Atlanta metro area to collect data and meet with study participants.

Petitioners owned a custom-built 1969 Camaro, their only car. Ms. Parker used the Camaro for commuting to personal training appointments and for travel in connection with her research. The car broke down frequently, and the parts required to repair it were difficult to obtain. While the Camaro was being repaired, Ms. Parker used ride-sharing services or public transportation.

Petitioner husband (Mr. Parker) worked in information technology (IT) as a network engineer. From November 2012 to August 2015 he worked for Capital TechSearch (CTS), an IT staffing company based in Richmond, Virginia. One of CTS' clients was the Federal Reserve Bank of Richmond (Bank), which is headquartered in Richmond but has offices in Baltimore and Charlotte. CTS assigned Mr. Parker to work on Bank matters, and the Bank gave him the option of moving to one of those cities or teleworking from his home in Atlanta.

Mr. Parker chose the latter option and signed a "Telework Agreement" with the Bank in 2012. This agreement stated in relevant part: "Telework is a privilege" and "[y]ou acknowledge that you have [voluntarily] requested to telework." The agreement provided that Mr. Parker would not be reimbursed for home office

[*4] expenses or for travel between Atlanta and the Bank's offices. The agreement could be canceled if the Bank deemed his performance unsatisfactory.

The Bank issued Mr. Parker a laptop computer, two external monitors, and any other "basic and necessary office supplies" to make his home suitable for remote work. The Telework Agreement had a section captioned "Employee-Owned Equipment" where Mr. Parker could list any personal equipment he owned and intended to use while teleworking. He left this section blank. The agreement stated that "[a]ny changes in personal equipment must be approved by your manager in advance and in writing."

Mr. Parker's relationship with CTS was governed by a "Contract Employment Agreement." This agreement classified him as an "Employee" or "at-will * * * Contract Employee" who "shall maintain an employment relationship with * * * [CTS] at all times." He was paid a fixed hourly rate by CTS, was eligible for medical and retirement benefits, was required to submit weekly timecards, and was terminable by CTS at will.

Mr. Parker stopped working for CTS in August 2015 when the Bank hired him directly as a full-time employee. He continued to perform services remotely from Atlanta and signed a telework agreement substantially identical to the one he had executed in 2012. CTS and the Bank reported the wages they paid Mr. Parker

[*5] during 2015 on Forms W-2, Wage and Tax Statement, and he reported this income as wages on petitioners' 2015 return.

B.    Petitioners' Tax Reporting and IRS Examination

Petitioners jointly and timely filed Form 1040, U.S. Individual Income Tax Return, for 2015.  The IRS selected that return for examination and issued them a timely notice of deficiency making numerous adjustments.  They timely petitioned this Court, and we tried the case remotely via Zoomgov in September 2020.  Both parties made concessions before and during trial.[2]  The four issues remaining for decision are as follows.

1.    Car and Truck Expenses

Petitioners attached to their 2015 return a Schedule C listing Ms. Parker as the sole proprietor of a personal training business.  On that Schedule C they claimed a deduction of $25,870 for car and truck expenses.  They calculated $32,313 of expenses for operating the Camaro in 2015 and multiplied that sum by

---

[2]Respondent conceded that petitioners are not liable for any accuracy-related penalty under section 6662.  See sec. 6751(b)(1).  Petitioners conceded that respondent correctly disallowed:  (1) a $5,009 deduction claimed on Schedule C for business travel; (2) a $2,910 deduction claimed on Schedule C for meals and entertainment expenses; and (3) a $3,539 deduction claimed on Schedule A for real estate taxes.  The parties agreed that petitioners are not entitled to an education credit, as claimed on their return, but should receive instead a Schedule C deduction for education expenses.

[*6] a "business use" percentage of 80.06% (assuming 10,662 business-use miles and 2,656 miles devoted to commuting or personal use). They also claimed a deduction of $4,083 for depreciation on the Camaro.

Petitioners did not keep a contemporaneous mileage log in 2015 and did not have access to reliable odometer readings from that period. During the IRS examination they tried to estimate Ms. Parker's business mileage using her calendar, her driving habits, and distances drawn from Google Maps. They eliminated commuting miles from their calculus and assumed no personal miles other than weekly trips to buy groceries, biweekly trips to buy household items, and monthly trips to Costco. Alleging $29,402 of expenses for operating the Camaro and a "business use" percentage of 97%, they claimed a deduction of $28,520.

The revenue agent (RA) determined that petitioners had substantiated neither the full amount of their reported expenses nor their business use percentage. After analyzing the receipts they submitted, the RA allowed (and respondent concedes petitioners are entitled to) deductions of $4,815 for vehicle expenses and $4,083 for depreciation.

2. Retirement Contributions

In January 2015 petitioners created a "Solo 401(k)" plan for Ms. Parker's personal training business, intending it as a vehicle for consolidating their existing

[*7] retirement accounts. On April 14, 2016, they deposited $140,000 into this account, intending that the deposit be attributed to the 2015 tax year. This sum was broken into $100,267 (labeled "cashier's check"), $26,793 (labeled "funds received"), and $12,940 (labeled "funds received"). The $26,793 was a rollover from Mr. Parker's retirement account with British Telecom. The $12,940 was a rollover from Mr. Parker's retirement account with CTS. The remaining $100,267 consisted of $39,823 rolled over from an earlier "Solo 401(k)" account plus $60,444 of unexplained funds.

On their 2015 return petitioners claimed a Self-Employed SEP, Simple, and Qualified Plans deduction of $60,444. The RA disallowed that deduction in full for lack of substantiation. She allowed (and respondent concedes that petitioners are entitled to) a deduction of $4,440 as a Health Savings Account contribution.

3. Unreimbursed Employee Business Expenses

On their return petitioners claimed Schedule A deductions totaling $15,129 for transportation, overnight travel expenses, meals and entertainment, and other business expenses allegedly associated with Mr. Parker's IT work. The RA disallowed these deductions in their entirety but concluded that Mr. Parker had incurred $730 of home office expenses, calculated as an allocable percentage of petitioners' utilities expense for the first eight months of 2015 (the period in which Mr. Parker

[*8] was employed by CTS). Because $730 was less than 2% of petitioners' adjusted gross income (AGI), no deduction was ultimately allowed. See secs. 67(a), 162(a); Jones v. Commissioner, 146 T.C. 39, 44 (2016).

4.      Demolition Expenses

In September 2008 Mr. Parker bought a house, sight unseen, on English Avenue in Atlanta (English Avenue property) for $17,000 and closing costs. He originally thought he might live in the house but decided against it after his first on-site visit. His initial efforts to rent the house were unsuccessful, and he never derived any income from it.

In early 2010 Mr. Parker canceled the insurance policy on the house. In January 2014 vandals broke into the building and set a fire that destroyed it. In 2015 petitioners paid $10,000 to have the burned-out structure demolished and $175 for a related permit. Mr. Parker continued to own the property as of the trial date.

On Schedule E, Supplemental Income and Loss, petitioners claimed a deduction of $10,000, denominated a "repairs" expense, for the cost incurred to have the structure demolished. The RA disallowed this deduction in its entirety. Agreeing that this deduction should not have been claimed on Schedule E, petitioners at trial urged their entitlement to a Schedule A deduction of $23,856. That sum con-

[*9] sists of $10,000 for direct demolition expenses, $175 for a demolition permit, and $13,681 for their alleged basis in the demolished building.

OPINION

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving their entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). A taxpayer must show that he or she has met all requirements for each deduction and keep books or records that substantiate the expenses underlying it. Sec. 6001; Roberts v. Commissioner, 62 T.C. 834, 836 (1974). Failure to keep and present such records counts heavily against a taxpayer's attempted proof. Rogers v. Commissioner, T.C. Memo. 2014-141, 108 T.C.M. (CCH) 39, 43.

Under Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), if a taxpayer claims a deduction but cannot fully substantiate the underlying expense, the Court in certain circumstances may approximate the allowable amount, "bearing heavily if it [so] chooses upon the taxpayer whose inexactitude is of his own making." The Court must have some factual basis for its estimate, however, else the allowance would amount to "unguided largesse." Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

[*10] A.    Car and Truck Expenses

Section 162(a) permits a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on the taxpayer's trade or business.  When deducting vehicle expenses, a taxpayer may choose between the standard "mileage allowance" and a deduction based on actual expenses, including depreciation.  See Mears v. Commissioner, T.C. Memo. 2013-52, 105 T.C.M. (CCH) 1354, 1359; see also Rev. Proc. 2010-51, 2010-51 I.R.B. 883.  A taxpayer using the actual expense method may deduct only that percentage of her costs that corresponds to her "business use" of the vehicle.  See Larson v. Commissioner, T.C. Memo. 2008-187, 96 T.C.M. (CCH) 73, 77; sec. 1.274-5T(d)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46025 (Nov. 6, 1985).

Section 274(d)(4) sets forth heightened substantiation requirements (and overrides the Cohan rule) with respect to "listed property."  As in effect during 2015, "listed property" included "any passenger automobile."  Sec. 280F(d)(4)(A)(i); sec. 1.280F-6(b)(1)(i), Income Tax Regs.  No deduction is allowed for vehicle expenses unless the taxpayer substantiates, by adequate records or sufficient evidence corroborating her own statements, the amount, time and place, and business purpose for each expenditure.  See sec. 1.274-5T(c), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).  Substantiation by "ad-

**[\*11]** equate records" generally requires the taxpayer to "maintain an account book, diary, log, statement of expense, trip sheets, or similar record" prepared contemporaneously with the use of the vehicle, as well as evidence documenting the expenditures. Id. para. (c)(2), 50 Fed. Reg. 46017. An actual contemporaneous log is not strictly required, but records made at or near the time of the expenditure have greater probative value than records made later. Id. subpara. (1).

After examining the receipts petitioners submitted, the RA allowed a deduction of $4,815 for Schedule C vehicle expenses. In urging a larger deduction petitioners have changed their assumed facts and computational theory at least three times since filing their 2015 return. Their final position on posttrial brief is that they are entitled to a deduction of $23,358, reflecting $26,817 of expenses for the Camaro and a business use percentage of 87.1% (assuming 6,399 business miles and 951 personal miles).

We find that petitioners have not proven their entitlement to a deduction larger than respondent has allowed. First, petitioners produced no contemporaneous (or otherwise reliable) records of the total mileage driven on the Camaro during 2015. Second, they have not satisfactorily accounted for both spouses' personal use of the car. We do not find plausible their assumptions that their personal use of the Camaro was limited to weekly, biweekly, and monthly trips to buy groceries

[*12] and household supplies. Third, the evidence they provided at trial to substantiate Ms. Parker's business use of the Camaro was, at times, inconsistent with other evidence in the record and therefore not credible. We conclude that petitioners have fallen far short of satisfying the strict substantiation requirements of section 274(d).

B.    Retirement Contributions

The Code allows taxpayers to deduct certain qualified contributions to retirement plans. Secs. 62(a)(6) and (7), 219(a), 404(a). As with other deductions, the burden of showing the amount and deductibility of contributions to an eligible plan is on the taxpayers. See Barie v. Commissioner, T.C. Memo. 2016-160, 112 T.C.M. (CCH) 255, 257. "Rollovers"--that is, transfers from one retirement account to another--are not deductible. See sec. 1.219-1(b)(2)(iii), Income Tax Regs.

On April 14, 2016, petitioners deposited $140,000 into their "Solo 401(k)" account, intending to designate it for tax year 2015. Of that sum, $39,733 was rolled over from Mr. Parker's retirement plans with British Telecom and CTS. The balance consisted of a $100,267 cashier's check.

Petitioners contend that $39,823 of the latter sum was rolled over from an earlier "Solo 401(k)" plan and that the remaining $60,444 was a deductible retirement contribution. But they submitted no evidence showing where the $60,444

[*13] originated, i.e., whether it consisted of new cash or whether it was also a rollover from a preexisting retirement account. Admitting their failure to produce bank or brokerage records showing the source of these funds, they asserted in their post-trial brief that they prefer to keep their savings "at home where they are protected * * * and safe from unscrupulous individuals including IRS agents." This assertion does not satisfy their burden of proof.

Mr. Parker testified that he created the new "Solo 401(k)" to consolidate petitioners' retirement accounts. Evidence in the record (including petitioners' prior tax returns) indicates that they had other retirement plan assets that could have been the source for the $60,444 slice of the cashier's check. For 2013 and 2014 alone, petitioners claimed deductions totaling $82,363 for contributions to self-employed SEP, SIMPLE, and qualified plans. But they admit a rollover from their prior "Solo 401(k)" of only $39,823. Viewing the evidence as a whole, we find that petitioners have failed to carry their burden of proving that any portion of the $60,444 contribution consisted of new cash rather than nondeductible rollover.

C.    Unreimbursed Employee Business Expenses

Mr. Parker was a wage-earning employee throughout 2015, first for CTS and then for the Bank. Although he contends that he served CTS as an independent contractor, we find no evidence to support that argument. This Court applies a fa-

[*14] miliar seven-factor test to decide whether a worker is an employee or an independent contractor, and all the facts and circumstances of each case are considered. See Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 269-270 (2001); Jones v. Commissioner, T.C. Memo. 2014-125, 107 T.C.M. (CCH) 1609, 1613.

Applying this test, we find the following facts most significant. Mr. Parker's contract with CTS categorized him as an "employee" or "contract employee" and stated that he was to "maintain an employment relationship with CTS at all times." He was paid a fixed hourly rate by CTS, was eligible for medical and retirement benefits, and had no opportunity for profit or loss other than normal wages, which were reported on a Form W-2. He reported that income as wages and did not file a Schedule C. CTS required Mr. Parker to submit weekly timecards, and he was allowed to work remotely only if the Bank viewed his performance as satisfactory. He was furnished with a laptop computer, two external monitors, and any other "basic and necessary office supplies." He was warned that "[a]ny changes in personal equipment must be approved by your manager in advance and in writing." Taken together, these facts demonstrate that Mr. Parker during the first eight months of 2015 was an "employee" of CTS rather than an independent contractor.

**[\*15]** During 2015 a wage-earning employee was allowed to deduct certain work-related expenses that his employer did not reimburse, subject to a 2%-of-AGI floor. Secs. 67(a), 162(a); <u>Jones</u>, 146 T.C. at 44. The RA disallowed any deduction for the expenses Mr. Parker claimed but permitted a home office deduction of $730. At trial petitioners contended that Mr. Parker was entitled to deduct $599 for the cost of a subscription to an IT job-training website and $2,195 for the cost of a computer monitor. They also urged that the home office deduction be increased to $2,519.

We conclude that the subscription expense is eligible for deduction. Education expenses are deductible (inter alia) if the education "[m]aintains or improves skills" required by the taxpayer in his employment. <u>See</u> sec. 1.162-5(a)(1), Income Tax Regs. The job training programs on the subscription website were directly related to Mr. Parker's job as a network engineer, and he credibly testified that this expense was not eligible for reimbursement by either of his employers. <u>See</u> <u>Lucas v. Commissioner</u>, 79 T.C. 1, 7 (1982).

We reach the opposite conclusion about the computer monitor. The Bank supplied Mr. Parker with a laptop computer and two external monitors for use in his work. The Telework Agreement included a section where he could list any personal equipment he owned and intended to use while teleworking, but he left this

**[*16]** section blank. The agreement stated that "[a]ny changes in personal equipment must be approved by your manager in advance and in writing," but he does not contend that he secured such approval. In any event, there is no convincing evidence that he used the new monitor exclusively for business purposes.

Finally, we find that petitioners have failed to prove entitlement to a home office deduction larger than the RA allowed. Section 280A generally disallows deductions related to a dwelling used by the taxpayer as a residence. However, there is an exception for a dwelling (or portion thereof) that is "exclusively used on a regular basis" as the principal place of business for an employee, but only if it is "for the convenience of his employer." Sec. 280A(c)(1).

Petitioners failed to demonstrate that Mr. Parker's home office was for the convenience of CTS or the Bank. He made no showing that his home office was essential to the proper functioning of either employer's business or necessary to enable him to perform his duties properly. See Frankel v. Commissioner, 82 T.C. 318, 325-326 (1984). A home office is not for the employer's convenience if it is maintained for the employee's personal convenience, comfort, or economic benefit. See Hamacher v. Commissioner, 94 T.C. 348, 358 (1990).

[*17] The evidence established that Mr. Parker elected to work from home in Atlanta because he did not wish to move to any of the three cities where the Bank had its offices. Neither CTS nor the Bank required Mr. Parker to work from home. To the contrary, the Telework Agreement stated: "You acknowledge that you have requested to telework and that you are voluntarily entering into this agreement." Mr. Parker maintained a home office, not for his employer's convenience, but for his own convenience and that of his spouse.

In sum, petitioners have not shown that they are entitled to a home office deduction in excess of the $730 respondent allowed. The RA could reasonably have allowed no deduction at all. But we will not disturb respondent's concession that petitioners are allowed the deduction determined in the notice of deficiency.

D. Demolition Expenses

Petitioners contend that they are entitled to a Schedule A deduction of $24,856, attributable to the loss they allegedly suffered upon demolition of the English Avenue property. This sum comprises $10,000 in direct demolition expenses, $175 for a demolition permit, and $13,681 for their alleged basis in the building. The RA correctly disallowed the deduction in full because it is barred by statute.

**[*18]**  Section 280B, captioned "Demolition of Structures," was enacted in 1984. See Deficit Reduction Act of 1984, Pub. L. No. 98-369, sec. 1063(a), 98 Stat. at 1047.  It provides that, "[i]n the case of the demolition of any structure," no deduction otherwise allowable shall be allowed to the owner for "any amount expended for such demolition" or "any loss sustained on account of such demolition."  Sec. 280B(1).  Rather, these amounts "shall be treated as properly chargeable to capital account with respect to the land on which the demolished structure was located."  Sec. 280B(2).

In support of a contrary conclusion petitioners cite section 1.165-3, Income Tax Regs.  That regulation, captioned "Demolition of Buildings," was promulgated in 1960 and amended in 1976.  See T.D. 6445, 1960-1 C.B. 93, as amended by T.D. 7447, 1977-1 C.B. 51.  This regulation has no effect for demolitions carried out after section 280B's effective date.  See Tonawanda Coke Corp. v. Commissioner, 95 T.C. 124, 128 & n.2 (1990) (applying the regulation to a demolition expense deduction claimed for 1978 but noting that section 280B applies to all demolitions after July 18, 1984).

Notwithstanding section 280B, petitioners contend that they are allowed a loss deduction under section 165(h) because the English Avenue structure was destroyed by fire.  And they assert that their position is supported by IRS Notice

[*19] 90-21, 1990-1 C.B. 332, which addresses "Treatment of Casualty and Theft Losses under Sections 165, 280B, and 469."

Petitioners' contention is doubly flawed. The fire that destroyed the building occurred in 2014; it could not give rise to a casualty loss deduction for 2015. See sec. 1.165-1(b), (d), Income Tax Regs. And Notice 90-21, supra, does not support their position. The relevant passage (much of which they omit from their brief) reads as follows:

> Section 280B of the Code does not disallow casualty losses allowable under section 165, but it does apply to amounts expended for the demolition of a structure damaged or destroyed by casualty, and to any loss sustained on account of such a demolition. If a casualty damages or destroys a structure, and the structure is then demolished, the basis of the structure must be reduced by the casualty loss allowable under section 165 before the "loss sustained on account of" the demolition is determined. [Notice 91-21, 1990-1 C.B. at 333.]

The notice includes several examples. In Example (2), the owner of a building damaged by an earthquake pays a contractor $200,000 to demolish the building and dispose of the rubble. The notice states that the owner "may not deduct the $200,000 expense. Under section 280B of the Code, * * * [the owner] must charge that expense to capital account with respect to the land." Id. at 334.

In sum, petitioners are not entitled to deduct for 2015 any amounts related to the demolition of the structure at the English Avenue property. Any

**[\*20]** costs associated with the demolition must be capitalized into the basis of the land and will be recovered if and when the land is sold. To the extent petitioners are seeking to deduct a casualty loss attributable to the fire itself, that loss deduction cannot be claimed on their 2015 return.

We have considered all arguments made by the parties, and, to the extent not addressed above, find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.